08 CV 6297

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
AURORA MARITIME INC.,                          :        08 CV _____
                                               :
                        Plaintiff,             :        ECF CASE
                                               :
        - against -                            :
                                               :
ANTARES TRANSPORT GmbH,                        :
                                               :
                        Defendant.             :
---------------------------------------------------------------X

**VERIFIED COMPLAINT**

Plaintiff, AURORA MARITIME INC., (hereafter referred to as "AURORA" or

"Plaintiff"), by and through its attorneys, Lennon, Murphy & Lennon, LLC, as and for its

Verified Complaint against the Defendant, ANTARES TRANSPORT GmbH (hereinafter

referred to as "ANTARES" or "Defendant") alleges, upon information and belief, as follows:

1.      This is an admiralty and maritime claim within the meaning of Rule 9(h) of the

Federal Rules of Civil Procedure and 28 United States Code § 1333. This claim involves the

breach of a maritime contract of charter. This matter also arises under the Court's federal

question jurisdiction within the meaning of 28 United States § 1331 and the New York

Convention on the Recognition and Enforcement of Foreign Arbitral Awards (9 U.S.C. § 201 *et*

*seq.*) and/or the Federal Arbitration Act (9 U.S.C. § 1 *et seq.*).

2.      At all times material to this action, Plaintiff was, and still is, a foreign corporation,

or other business entity, organized under, and existing by virtue of foreign law and was at all

material times the registered owner of the motor vessel "FANARA" (hereinafter the "Vessel").

3.     Upon information and belief, Defendant ANTARES was, and still is, a foreign corporation, or other business entity, organized under, and existing by virtue of foreign law with a place of business located at Am Marienbad, 12, 38640 Goslar, Germany.

4.     By a fixture recap dated June 21, 2007 Plaintiff time chartered the Vessel to Defendant for a period of 3 months minimum and 4 months maximum in Charterer's option. The charter party called for the carriage of lawful merchandise, subject to specified cargo exclusions. *A copy of the fixture recap dated June 21, 2007 otherwise based on M/V Gose Racer charter party dated January 11, 2005 is annexed hereto as Exhibit 1.*

5.     Plaintiff delivered the Vessel into the service of the Defendant under the time charter and at all times fully performed its duties and obligations under the charter party.

6.     The charter party obligated Defendant ANTARES to pay to Plaintiff hire in the sum of $3,250 daily INCLOT *(including overtime)* payable every 15 days in advance. *See Ex. 1.*

7.     A dispute has arisen between the parties regarding ANTARE's failure to pay in full all charter party hire due and payable, unlawfully deducting from hire exaggerated vessel off hire, failing to redeliver the vessel to Plaintiff with about the same quantities of fuel oil (i.e., bunkers) as was aboard the vessel at the time of delivery, unlawfully deducting from hire a claim of cargo shortage and also failing to properly account for expenses incurred for the parties' account.

8.     In particular, ANTARES owes to AURORA the following as reflected by AURORA's final hire statement: a charter hire balance due of $51,163.54. *See Plaintiff's final hire statement attached annexed hereto as Exhibit 2.*

9.     As a result of GRANIT's breach of the charter party due to its failure to pay all hire due and payable, and its failures as otherwise described herein, Plaintiff has sustained

2

damages in the total principal amount of $51,163.54, exclusive of interest, arbitration costs and attorneys fees.

10.    Pursuant to the charter party, disputes between the parties are to be submitted to arbitration in London subject to English law. AURORA specifically reserves its right to arbitration of its claims against ANTARES. AURORA is preparing to commence London arbitration against ANTARES.

11.    This action is brought in order to obtain jurisdiction over ANTARES and also to obtain security for AURORA's claims and in aid of arbitration proceedings.

12.    Interest, costs and attorneys' fees are routinely awarded to the prevailing party under English Law. Section 63 of the English Arbitration Act of 1996 specifically allows for recovery of these items as part of an award in favor of the prevailing party. As best as can now be estimated, Plaintiff expects to recover the following amounts at arbitration as the prevailing party:

| | | |
|---|---|---|
| A. | Principal claims: | $51,163.54; |
| B. | Estimated interest on claims-<br>3 years at 6% compounded quarterly: | $10,008.52; |
| C. | Estimated arbitration costs: | $10,000.00; and |
| D. | Estimated attorneys' fees and expenses: | $20,000.00. |
| **Total:** | | **$91,172.06.** |

13.    The Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure[1], but, upon information and belief, Defendant has, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court,

---

[1] *See Affidavit of Kevin J. Lennon in Support of Prayer for Maritime Attachment attached hereto as Exhibit 3.*

3

held in the hands of garnishees within the District which are believed to be due and owing to the Defendant.

14.     The Plaintiff seeks an order from this Court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching, *inter alia*, any assets of the Defendant held by any garnishees within the District for the purpose of obtaining personal jurisdiction over the Defendant and to secure the Plaintiff's claim as described above.

**WHEREFORE**, Plaintiff prays:

A.     That process in due form of law issue against the Defendant; citing it to appear and answer under oath all and singular the matters alleged in the Complaint failing which default judgment be entered against it;

B.     That since the Defendant cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching all goods, chattels, credits, letters of credit, bills of lading, effects, debts and monies, tangible or intangible, or any other funds up to the amount of **$91,172.06** belonging to, due or being transferred to, from, or for the benefit of the Defendant, including but not limited to such property as may be held, received or transferred in Defendant's name or as may be held, received or transferred for its benefit at, moving through, or within the possession, custody or control of banking/financial institutions and/or other institutions or such other garnishees to be named, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

4

C.   That the Court retain jurisdiction to compel the Defendant to arbitrate in accordance with the United States Arbitration Act, 9 U.S.C. § 1 *et seq.*;

D.   That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof;

E.   That this Court recognize and confirm any arbitration award(s) or judgment(s) rendered on the claims set forth herein as a Judgment of this Court;

F.   That in the alternative this Court enter judgment against the Defendant on the claims set forth herein;

G.   That this Court award Plaintiff the attorneys' fees and costs incurred in this action; and

H.   That the Plaintiff has such other, further and different relief as the Court may deem just and proper.

Dated:   Southport, CT
         July 11, 2008

The Plaintiff,
AURORA MARITIME INC

By:
Kevin J. Lennon
Patrick F. Lennon

LENNON, MURPHY & LENNON, LLC
420 Lexington Avenue, Suite 300
New York, NY 10170
(212) 490-6050 - phone
(212) 490-6070 - facsimile
kjl@lenmur.com
pfl@lenmur.com

## ATTORNEY'S VERIFICATION

State of Connecticut )
               )     ss.:     Town of Southport
County of Fairfield )

     1.     My name is Kevin J. Lennon.

     2.     I am over 18 years of age, of sound mind, capable of making this

Verification, and fully competent to testify to all matters stated herein.

     3.     I am a partner in the firm of Lennon, Murphy & Lennon, LLC attorneys for the

Plaintiff.

     4.     I have read the foregoing Verified Complaint and know the contents

thereof and believe the same to be true and accurate to the best of my knowledge, information

and belief.

     5.     The reason why this Verification is being made by the deponent and not

by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now

within this District.

     6.     The source of my knowledge and the grounds for my belief are the

statements made, and the documents and information received from, the Plaintiff and agents

and/or representatives of the Plaintiff.

     7.     I am authorized to make this Verification on behalf of the Plaintiff.

Dated:      Southport, CT
              July 11, 2008

                                     Kevin J. Lennon

# EXHIBIT 1

From: ."Navatrade S.A." <navatrad@otenet.gr>
To: mastrog1@otenet.gr
Subject: LgINT Message (REP:07596F600)
Date: Fri, 22 Jun 2007 12:13:02 +0300

TELIX MSG: 596F6-00 22/06/07 12:13

NAVATRADE SA - GD DAY - PHONE: +30210 9213222


ATT. MR. CH. VENTOURIS
AND
CAPT. ANT.. KARINTZIS

RCVD FOLL  F I X T U R E    R E C A P   FM CHRS' BROKERS

QUOTE

RE MV FANARA / ANTARES - TC PERIOD 3-4 MOS
------------  C/P DD 21/06/2007

PLEASED TO SEND THE FINAL FIXTURE RECAPITULATION WITH
ALL SUBJECTS LIFTED AND C/P DD.21/06/2007 AS FOLLOWS:


MV 'FANARA' EX 'AGHIOS SYMEON' EX 'CHEMI MOON' - SINGLEDECKER
FLAG: ST. VINCENT AND THE GRENADINES
3,595 MTS DWAT ON 5.660M SUMMER
3,469 MTS DWAT ON 5.543M WINTER
BLT OCTOBER 1982 JAPAN - LOA 91.91M, BEAM 14.03M,
2HO/2HA MCGRS HACOVERS
HAOPENINGS: NO1 20,15M X  8  M
            NO2 20,15M X 10,20M
GR/BL 168.000 / 164.591 CUFT
DERICKS 2 X 30 TONS + 2 X 3 TONS
 T 2,584 / NRT 1,402
VESSEL'S TANKTOP STRENGTH ABT 4.7MT/M2

SPEED/CONS: UNDER GOOD WEATHER CONDITIONS UPTO BEAUFORT 3
ABT 8.5 KNOTS ON ABT 4.0 MTS IFO (120 CST) + ABT 0.8 MT GAS OIL
IN PORT IDLE ABT 0.8 MTS GAS OIL - GEAR WORKING ABT 1.5 MTS GAS OIL
VESSEL BURNS GAS OIL WHEN MANOUEVERING IN/OUT PORTS OR  NAVIGATES
IN RIVERS / CANALS / RESTRICTED WATERS WITH OR WITHOUT PILOTS  TO
MASTER'S DISCRETION.''

TANK CAPACITIES AS FOLL:

ALL FIGURES MENTIONED BELOW ARE BSS 100% FULL

TANK NO2      IFO ABT 110 MTS
TANK NO3      IFO ABT  70 MTS
TANK NO4 PORT MGO ABT  14 MTS

```
TANK NO4 SBOARD MGO   ABT   13 MTS
TANK NO5 PORT    MGO   ABT   13 MTS
TANK NO5 SBOARD MGO   ABT   13 MTS
BALLAST TANK          ABT  945 MTS
AFTER PEAK       FW    ABT   70 MTS
FW TANK  PORT    FW    ABT   29 MTS
FW TANK SBOARD   FW   .ABT   29 MTS
```

PHOTOS OF VSL'S HOLDS AND POCKET PLAN AS ATTACHED

= ALL DETAILS ABOUT WOG =

DWCC : ABT 3,300 MTS DEPENDING ON BUNKERS AND OF COURSE THE S.F. OF CGO
PANDI: THE SOUTH OF ENGLAND PROTECTION AND IDEMNITY ASSOCIATION
       (BERMUDA) LIMITED VALIDITY OF DATE COVER: 20.02.2008
       (WHEN WILL BE RENEWED)
HANDM: NAME OF INSURERS: HELLENIC HULL MUTUAL ASSOCIATION
                         CORVETTE
                         BLUE WATER
                         BELMARINE
                         SIAT
                         NAVIGATORS
                         AHIS
                         EUROPEAN LINK ( INSURANCE BROKERS)
       COVERAGE AMOUNT :USD 2 MIO + INCREASED VALUE 500.000 USD
       VALIDITY DATE OF COVER: 24.04.2007/24.04.2008

NATIONALITY OF CAPTAIN: RUSSIAN
NATIONALITY OF CREW: GEORGIANS + (REVERTING)


VESSEL CURRENTLY AT BERMEO UNDER DISCHARGING OPERATION WHERE ETC
22 JUNE PM - AGW/WP. AGENTS AT BERMEO MESSRS MARBECO S.A. - SMAIL
MARBECO@MARBECO.ES  TELEPHONE + 34 94 6884647/48/49

FOR

- ACCOUNT ANTARES TRANSPORT GMBH, GOSLAR / GERMANY - BACKINFO AS GIVEN

- TIME CHARTER PERIOD OF MIN 3 MONTHS - MAXIMUM 4 MONTHS IN CHOPT

- THESE 3-4 MONTHS TO BE CONSIDERED AS TRIAL PERIOD, CHARTERERS AND
  OWNERS WILL TRY TO MUTUALLY AGREE AFTER THIS PERIOD TO EXTEND THE
  CHARTER UPTO TOTAL 12 MONTHS (+/- 3- DAYS IN CHOPT) WHICH IS
  INCLUDING THE TRIAL PERIOD WHEN HIRE WILL NOT BE LOWER THAN 10PC
  OF THE CURRENT AGREED TIMECHARTER RATE AND NOT HIGHER THAN 10PC
  OF THE CURRENT AGREED TIMECHARTER RATE. THIS WILL DEPEND ON THE
  MARKET SITUATION AFTER ENDIING OF THE FIRST 3-4 MONTHS.

- DELIVERY DLOSP BERMEO, NORTH SPAIN - ATDNSHINC

- LAY/CAN 20-30 JUNE 2007 - SHIP'S ETC BERMEO 22ND OF JUNE AGW/WP

- TRADING VIA SAFE PORTS SAFE BERTHS ALWAYS WITHIN IWL, BLACKSEA,
  FULL MED (EXCEPT ISRAEL - LEBANON - TOC), CONTINENT: GIBRALTAR-
  HAMBURG RANGE INCL UK (NO BALTIC) AND WEST AFRICA UPTO DAKAR
  BUT EXCLUDING MAURITANIA.

- REDLLY DLOSP 1SP WITHIN TRADING LIMITS - ATDNSHINC

- HIRE USD 3.250,-- DAILY INCLOT PAYABLE EVERY 15 DAYS IN ADVANCE

- BUNKERS ON DELIVERY TO BE PAID TOGETHER WITH THE FIRST HIREPAYMENT

- BUNKERING CLAUSE TO READ AS FOLL:
  BUNKERS ON DELY TO BE ABT 30/40 MTS IFO AND ABT 30/35 MTS
  MGO IN OWNS' OPTION. CHARTERERS TO REDELIVER THE VSL WITH ABOUT
  SAME QUANTITIES AS ACTUALLY ON BOARD ON DELIVERY. CHARTERERS TO
  PAY VALUE OF BUNKERS ON DELY TOGETHER WITH 1ST HIRE PAYMENT.
  PRICES BENDS USD 400 PMT FOR IFO AND 665 PMT FOR MGO. OWNERS'
  OPTION TO BUNKER VSL DURING THE CURRENCY OF THIS C/P PROVIDED
  SAME DOES NOT INTERFERE WITH CHARTERERS' OPS INCL DRAFT
  CONSIDERATIONS.

- USDS 1.500 LUMPSUM IN LIEU OF HOLDS CLEANING ON REDLY

- C/E/V USD 750,00 PER 30 DAYS OR PRORATA. CHARTERERS WILL PLACE
  A MOBILE PHONE ON BOARD AT THEIR EXPENSES WHICH WILL BE USED FOR
  CHARTERERS' MATTERS.

- INTERMEDIATE HOLDCLEANING USD 700,00 TOTAL
  BASIS BIMCO INTERMEDIATE HOLDS CLEANING CLAUSE:
  ''UPON COMPLETION OF DISCHARGE OF EACH CARGO, THE CREW SHALL RENDER
  CUSTOMARY ASSISTANCE IN CLEANING ALL CARGO COMPARTMENTS IN
  PREPARATION FOR THE NEXT CARGO, IF REQUIRED BY THE CHARTERERS AND IF
  NOT PREVENTED BY ANY REGULATIONS OR AGREEMENT WHATSOEVER. SUCH
  CLEANING WORK SHALL BE PERFORMED WHILE THE VESSEL IS EN ROUTE TO NEXT
  LOADING PORT, PROVIDED THAT THIS CAN BE SAFELY DONE AND THAT THE
  DURATION OF VOYAGE IS SUFFICIENT. THE CHARTERERS SHALL PAY TO THE
  OWNERS USD 700 TOTAL. EACH TIME SUCH CLEANING IS PERFORMED. THE
  OWNERS WILL ENDEAVOUR TO EFFECT SUCH CLEANING AS BEST POSSIBLE, BUT
  WITHOUT ANY GUARANTEE THAT THE CARGO HOLDS WILL BE SUFFICIENTLY
  CLEANED AND ACCEPTED ON ARRIVAL AT THE LOADING PORT AND THE OWNERS
  SHALL NOT BE RESPONSIBLE FOR ANY CONSEQUENCES ARISING FROM THE FACT
  THAT THE CREW HAS BEEN EMPLOYED IN CLEANING.''

- CARGO EXCL CL TO READ:
  ''FOLL CARGOES TO BE EXCLUDED: ALL DANGEROUS, INFLAMMABLE, INJURIOUS,
  HAZARDOUS AND CORROSIVE CARGOES, AMMUNITION, ARMS, EXPLOSIVES, RADIO
  ACTIVE OR NUCLEAR PRODUCTS OR WASTE, NUCLEAR FUEL, ACIDS, ASPHALT,
  PITCH IN BLK, LIVESTOCK, PETROLEUM OR ITS PRODUCTS, MOTOR SPIRIT,
  SALT, TAR OR ITS PRODUCTS, SODA ASH, BORAX, PYRITES, IRON PELLETS,
  IRON ORE FINES, MANIOC AND MANIOC PELLETS, SEED CAKES, LOADED BOMBS,
  COPRA OR ITS PRODUCTS, INFLAMMABLE/ INJURIOUS OR DANGEROUS GOODS,
  CALCIUM CARBIDE, CREOSOTED GOODS, BLK CEMENT AND BLK CEMENT CLINKERS,
  NAPTHA, BLACKPOWNDER, BLASTING CAPS, TNT, DYNAMITE, WET HIDES,

HOOVES, EXPLOSIVE DETONATORS, TURNINGS, TOXIC CARGOES, WAR
MATERIAL, FISHMEAL, MARBLE     BLOCKS,     GRANITE     BLOCKS,
CONCENTRATES, BONES, CHARCOAL, QUEBRACHO EXTRACTS, HIDES, DIRECT
REDUCED IRON (DRI) AND ITS PRODUCTS, SPONGE IRON, IRON BRICKETS,
CALCIUM HYPOCHLORIDE, LOGS, PETROLEUM COKE, SCRAP AND MOTOR
BLOCKS, AMMONIUM NITRATE, SULPHUR, POTASH, AGRICULTURAL
PRODUCTS SUCH AS OIL CAKES, OIL SEEDS, DETONATOR CAPS,
SUNFLOWER SEED EXPELLERS, ASBESTOS AND FERROSILICON.''

- CONWARTIME/STEVEDORE DAMAGE CLAUSE - AS PER PROFORMA C/P - SUB AGREEING.

- BIMCO ISM CLAUSE TO APPLY

- ARBITRATION AND G/A, IF ANY, IN LONDON ENGLISH LAW TO APPLY

- 4PC TTL INCL ADDCOM HERE + 1.25PCT TO NAVATRADE SA

- OTHERWISE AS PER C/P MV GOSE RACER CP DD 11TH JAN 2005 WHICH OFCOURSE
  ALTERS WITH ALL RELEVANT AMENDMENTS / ALTERATIONS, DELETIONS AND
  INSERTIONS AS PER MAIN TERMS AGREED AND FOLLOWING ALTERATIONS:

- LINE 33 DELETE ''HER DELIVERY'' INSERT ''ARRIVAL FIRST LOADING PORT''

- LINE 37 AMEND TO READ ''NOTICE ON FIXING THEN DAILY NOTICES''
  (ANY CASE PLS NOT VSL IS EXPECTED TO BE READY FOR DELIVERY DLOSP
  BERMEO ON 22/23 JUNE 2007 WP AGW UCE)

- LINE 47 AMEND TO READ ''...... ON OWNERS' TIME UNLESS NO TIME THEREBY
  LOST. OWNERS HAVE THE OPTION TO APPOINT MASTER AS OWNERS' SURVEYOR AS
  REQUIRED ABOVE.''

- LINE 50/69 DELETE ALL FM ''UNLESS CARRIED IN ACCORDANCE ....... upto
  end of the clause 4 in line 69....   RISK AND EXPENSE'' AND INSERT
  CARGO EXCLUSIONS CLAUSE AS AGREED IN MTERMS

- CLAUSE 5 LINE 71 AFTER ''WITHIN'' DELETE ALL AND INSERT TRADING AREAS
  AS AGREED IN MTERMS.
  ALSO ADD AT THE END ''NO OTHER TRADE IS ALLOWED UNDER THIS CP''

- LINE 93 AFTER ''CHARTERERS' ACCOUNT'' INSERT ''INCLUDING CREW
  ACCOMMODATION AT SHORE IF REQUIRED''

- LINE 94 AMEND TO READ: '' COST FOR GARBAGE REMOVAL SUSTAINED IS TO BE
  BORN 50/50 BY OWNERS/CHARTEREWRS BUT IF AGENTS AT PORTS OF CALL CHARGE
  TOGETHER WITH D/A PROFORMA COMPULSORY GARBAGE REMOVAL, ALTHOUGH OWNERS
  WILL NOT DISPOSE ANY GARBAGE, THIS EXPENSE WILL BE 100PCT FOR CHARTERERS'
  ACCOUNT.''

- LINE 104 REINSTATE ALL THE DELETED WORDS
  AND DELETE ALL THE WORDING AFTER LINE 105 I.E. FM '' LASHING/SECURING/
  .... UPTO .... MASTER SUPERVISION'' INCLUSIVE.

- CLAUSE 9 (A) TO BE AMENDED AS PER MTERMS AGREED REST OK

- LINE 135 DELETE ''10'' INSERT ''ABT 15''

- CLAUSE 13 (B) TO BE DELETED AND TO BE AMENDED:
  ''IN PRINCIPAL NO DECK CARGO WILL BE LOADED,  HOWEVER INCASE CHARTERERS
  WILL HAVE SOME DECK CARGO TO BE LOADED,  CHARTERERS WILL INFORM OWNERS
  AND THIS WILL BE DISCUSSED/AGREED CASE BY CASE BETWEEN
  OWNERS/CHARTERERS/MASTER.
  IN THE EVENT OF DECK CARGO BEING FINALLY AGREED TO BE CARRIED AS
  ABOVE, THE OWNERS ARE TO BE AND ARE HEREBY INDEMNIFIED BY THE
  CHARTERERS .....'' ETC ETC REST OF WORDING TO REMAIN AS PER
  ITEM(B) OF CLAUSE 13

- LINE 192 AFTER ''ACCOMPANY'' INSERT ''AT PORTS BUT NOT TO TRAVEL WITH''
  (its a small vsl no much room on board)

- LINE 195 DELETE ''5'' INSERT ''15''

- LINE 197 DELETE ''3'' INSERT ''10''

- LINE 235 AFTER ''PROVEN'' INSERT ''DIRECTLY RELATED''

- LINE 242 D/D REVERTING

- LINES 285/286/287 TO BE REINSTATED BUT IN LINE 287 DELETE
  FM '' SHALL BE COVERED/SETTLED BY OWNERS ..... etc etc ... till end ..
      ....  THEIR P+I CLUB.'' INCLUSIVE
  LINE 287 TO ADD:
  ''INCASE OF ANY RESPONSIBILITY FOR CARGO CLAIMS FROM THE PART OF THE
  VESSEL, SAME SHALL BE COVERED/SETTLED BY OWNERS' PANDI CLUB.
  CHARTERERS WILL HAVE THE BENEFIT OF OWNERS' PANDI CLUB AS FAR AS PANDI
  CLUB RULES PERMIT SAME.
  IN ANYCASE CHARTERERS WILL BE LIABLE FOR THE ''FRANCHISES'' IMPOSED TO
  OWNERS BY THEIR PANDI CLUB.''

- LINE 298 AFTER ''TO BE OFF HIRE'' ADD ''PRORATA''

- LINE 299 DELETE '' AND THE OWNERS TO PAY STEVEDORE STAND-BY CHARGES
  OCCASIONED THEREBY,''

- LINE 301 AFTER ''BEAR THE COST'' ADD ''(AFTER OWS APPROVE SAME)''

- CLAUSE 29 DELETE ITEMS (E), (F)
  ALSO IN SAME CLAUSE 29 ADD AT THE END
  ''THE CREW TO RENDER ABOVE SERVISES/ OPERATIONS IF AND WHEN REQUIRED BY
  CHARTERERS, UNLESS PORT REGULATIONS PROHIBIT SAME IN WHICH CASE SHORE
  LABOUR TO BE FOR CHARTERERS' ACCOUNT. DURING ALL SUCH TIME THE VESSEL
  TO REMAIN ON HIRE.''

- CLAUSE 30 DELETE ''OR WAYBILLS''  WHEREVER MENTIONED SAME IN THIS CL.
  SAME CL30 DELETE ''OR TALLY CLERK'S'' WHEREVER MENTIONED SAME IN THIS CL

- CLAUSE 30 ITEM (C) TO REMAIN AS PER C/P WITH FOLLOWING AMENDMENT:

''IN THE CASE THAT OWNERS WILL AGREE AS MENTIONED IN CLAUSE 13(B)
VESSEL TO CARRY DECK CARGO,   BILLS OF LADING COVERING THIS DECK CARGO
SHALL BE CLAUSED : ''SHIPPED ON DECK.....'' ETC REST OF WORDING
TO REMAIN AS PER ITEM (C) OF CLAUSE 30.

- LINE 379/380 DELETE ''BUT NOT EXCEEDING A VALUATION OF''

- CLAUSE 36 DELETE AND INSERT BIMCO INTERMEDIATE CL AS AGREED IN MTERMS
  ALSO ADD THE WORDING WE HAVE AGREED FOR THE REDELIVERY OF THE VSL
  WITH UNCLEAN HOLDS.

- CLAUSE 38 TO BE DELETED

- CLAUSE 45 DELETE '' NEW YORK''
  SAME CLAUSE 45 LINE 512 AFTER ''SHALL BE MEMBERS OF''
  INSERT ''L.M.A.A.,''

ADDITIONAL CLAUSES
==================

AAA.

''CHARTERERS' AGENTS TO RENDER WHATEVER POSSIBLE ASSISTANCE TO
OWNERS' MATTERS SUCH AS HOSPITALIZATION, REPATRIATION OF CREW AND
SUPPLY OF STORES AND PROVISIONS AGAINST OWNERS' PAYMENT OF ACTUAL
EXPENSES AND HANDLING AGENCY FEE, IF ANY. IN ANY CASE CHARTERERS'
AGENTS TO HANDLE MINOR OWNERS' MATTERS SUCH AS CREW MAIL, CASH ADVANCE
TO MASTER, CREW SHORE PASS, MINOR SUPPLIES AND MINOR REPAIRS WITHOUT
AGENCY FEE.''

BBB.

''CHARTERERS UNDERTAKE TO INFORM THEIR SERVANTS AND SUPPLIERS
I.E. STEVEDORES, BUNKER SUPPLIERS, AGENTS ETC THAT ALL SERVICES/
SUPPLIES RENDERED FOR THIS VESSEL TO BE FOR CHARTERERS' SOLE ACCOUNT
AND THAT NO CLAIM FOR RECOVERY DUE TO CHARTERERS' NON-FULFILLMENT OF
  SIR OBLIGATIONS CAN BE MADE UP AGAINST THE OWNERS OF THE VESSEL.

CHARTERERS WILL DO THEIR BEST TO INFORM OWNERS WELL IN ADVANCE NAMES OF
AGENTS, TUGS, STEVEDORES, BUNKER SUPPLIERS INCLUDING THE RESPECTIVE STYLES
AT EVERY INTENDED PORT.''

CCC.

''IN UKRAINIAN OR RUSSIAN PORTS IN BLACK SEA IN CASE VESSEL HAS TO
ARRIVE WITH BALLAST WATER IN HER HOLDS/TANKS, MASTER TO FOLLOW
ALWAYS CHARTERERS' AND THEIR AGENTS' INSTRUCTIONS CONSERNING WHERE
TO TAKE BALLAST BUT EVENTUAL CLAIMS FROM PORT AUTHORITIES CONSERNING
VESSEL'S DE-BALLASTING IN PORT AREA ALWAYS TO BE FOR CHARTERERS' ACCOUNT.''

DDD.

''BIMCO ISM CLAUSE, BIMCO HAMBURG RULES CLAUSE AS BELOW TO BE FULLY

INCORPORATED IN THIS C/P''

BIMCO HAMBURG RULES CLAUSE: .

''NEITHER THE CHRTRS NOR THEIR AGENTS SHALL PERMIT THE ISSUE OF ANY
B/L , WAYBILL OR OTHER DOCUMENT EVIDENCING A CONTRACT OF CARRIAGE
(WHETHER OR NOT SIGNED ON BEHALF OF THE OWNERS OR ON THE CHRTRS'
BEHALF OR ON BEHALF OF ANY SUB-CHRTRS) INCORPORATING'', WHERE NOT
COMPULSORILY APPLICABLE,   THE HAMBURG  RULES OR ANY OTHER
LEGISLATION GIVING EFFECT TO THE HAMBURG RULES OR ANY OTHER
LEGISLATION IMPOSING LIABILITIES IN EXCESS OF HAGUE OR HAGUE/
VISBY RULES.
THE CHRTRS SHALL INDEMNIFY THE OWS AGAINST ANY LIABILITY, LOSS OR
DAMAGE WHICH MAY RESULT FROM ANY BREACH OF THE FOREGOING
PROVISIONS OF THIS CLAUSE.''

EEE.

''CHARTERRES HAVE THE OPTION TO ISSUE LINER BS/L BUT IN SUCH CASE MASTER
WILL ONLY SIGN MATE'S  RECEIPT AND AGENTS TO ISSUE ''ANTARES TRANSPORT'' LINER
BS/L WHERE IS STATED THAT ''ANTARES TRANSPORT'' IS THE CARRIER.
IN ADDITION,  THE LINER BILLS OF LADING THAT CHARTERERS' AGENTS WILL
ISSUE AS ABOVE WILL BE IN STRICT CONFORMITY WITH MATE'S RECEIPT AND
ON TERMS NOT LESS FAVOURABLE THAN HAGUE VISBY RULES. CHARTERERS WILL
ALSO PROVIDE OWNERS WITH A COPY OF BS/L AS ISSUED.''

FFF.

''CHARTERERS AGREE THAT AS FROM 11TH AUGUST 2007 ONWARDS AND WHEN VSL WILL
SAIL IN CONTINENT AREA BETWEEN USHANT - HAMBURG RANGE INCLUDING U.K.
(IN ANY CASE AS PER MAP OF SECA FOR ENGLISH CHANNEL AND NORTE SEA)
SHE WILL BURN M.G.O IN HER MAIN ENGINE INSTEAD OF IFO (120) IN ORDER
VESSEL TO COMPLY WITH REQUIREMENTS OF THIS ''SECA''.''

END+÷

  EASE ADVISE CONFIRM ABOVE REASONABLE COMMENTS IN ORDER VSL BE FULLY
FIXED ADVISING ALSO FIRST INSTRUCTIONS TO BE GIVEN TO THE MASTER/LOADING
PORT AND FULL STYLE OF AGENTS THERE.


END


WE TRUST THAT THE ABOVE IS IN LINE WITH NEGOS HELD WHICH INCASE OF
DISCREPANCIES,  PLS NOTIFY IMMEDIATELY FOR CORRECTION.

MEANTIME PLEASE ADVISE SHIP'S LATEST ETC. BERMEO, COMMUNICATION
MEANS, CERTIFICATES, OWNERS' CONTACT DETS ETC (AS PER YESTERDAY'S
MSG3 (OUR DOC-NO 2242236)

THANKS AGAIN FOR THIS BOOKING.

TELiX MSG: 5971D-00 22/06/07 12:24

NAVATRADE SA - GD DAY - PHONE: +30210 9213222


ATT. MR. CH. VENTOURIS
AND
CAPT. ANT. KARINTZIS

FURTHER TO OUR TLCON FEW MINS AGO HAVE SENT FOLL TO CHRS ON
BEHALF OF THE OWNS:

QUOTE

RE MV FANARA / ANTARES - TC PERIOD 3-4 MOS
------------- C/P DD 21/06/2007


THKS FOR YOUR FIXTURE RECAP FEW CORRECTIONS FM OUR FIRST QUICK
CHECKING
(REVRTING IF OWNERS WILL FIND MORE WHICH I DOUBT)


++-+++-+++++++-++++++++++++++++-+++++-+++-+++++


    COVEREGE AMOUNT :USD 2 MIO + INCREASED VALUE 500.000 USD
    VALIDITY DATE OF COVER: 24.04.2007/24.04.2008


DELETE:
"- CONWARTIME/STEVEDORE DAMAGE CLAUSE - AS PER PROFORMA C/P -
SUB AGREEING."


- CLAUSE 13 (B) TO BE AMENDED AS FOLL:
"IN PRINCIPAL NO DECK CARGO WILL BE LOADED, HOWEVER INCASE
CHARTERERS
WILL HAVE SOME DECK CARGO TO BE LOADED, CHARTERERS WILL
INFORM OWNERS
AND THIS WILL BE DISCUSSED/AGREED CASE BY CASE BETWEEN
OWNERS/CHARTERERS/MASTER.
IN THE EVENT OF DECK CARGO BEING FINALLY AGREED TO BE CARRIED
AS
ABOVE, THE OWNERS ARE TO BE AND ARE HEREBY INDEMNIFIED BY THE

CHARTERERS ....." ETC ETC REST OF WORDING TO REMAIN AS PER
ITEM(B) OF CLAUSE 13

- LINE 242 D/D:  LAST DD JUNE 2006 - NEXT DD JUNE 2009

END++

DELETE FM FIXTURE RECAP:
"PLEASE ADVISE CONFIRM ABOVE REASONABLE COMMENTS IN ORDER
VSL BE FULLY
FIXED ADVISING ALSO FIRST INSTRUCTIONS TO BE GIVEN TO THE
MASTER/LOADING
PORT AND FULL STYLE OF AGENTS THERE.
END"

+++++++++++++++++++++++++++++++ END OF CORRECTIONS

UNQUOTE.

REGARDS/JOHN PEPPES

Code Name: **"NYPE 93"**
Recommended by:
The Baltic and International Maritime Council (BIMCO)
The Federation of National Associations of
Ship and Brokers and Agents (FONASBA)



# TIME CHARTER©

New York Produce Exchange Form
*Issued by the Association of Ship Brokers and Agents (U.S.A.), Inc.*

November 8th, 1913 – Amended October 20th, 1921; August 6th, 1931; October 3rd, 1946;
Revised June 12th 1981; September 14th 1993.

THIS CHARTER PARTY, made and concluded in  *Goslar*                                                                              .1
this   *11th*                          day of *January 2005*                                                                         2

Between. *Gose Navigation Ltd, Exchange Buildings, Republic Street, La Valetta*                            3
                                                                                                                                                      4
<u>Owners</u> of the Vessel described below, and *ANTARES Transport GmbH, Am Marienbad 12,*      5
*D-38640 Goslar as*                                                                                                                             6
                                                                                                                                                      7
Charterers.                                                                                                                                          8

## Description of Vessel                                                                                                                    9

Name *Gose Racer*                          Flag   *Malta*               Built  *1982*              (year)    10
Port and number of Registry   *Malta*                                                                                           11
Classed   *Germanischer Lloyd 100A5*                        in                                                               12
Deadweight  *2857*    ~~long~~*/metric* tons (cargo and bunkers, including freshwater and       13
stores not exceeding   ~~long~~*/metric* tons) on a salt water draft on  *4,50m*                           14
on summer freeboard.                                                                                                                     15
Capacity *133.090*     cubic feet grain      *133.090*          cubic feet bale space.                      16
Tonnage *1988*          GT/~~GRT~~.                                                                                             17
Speed about  *9,50*   knots, fully laden, in good weather conditions up to and including maximum   18
force  *3*  on the Beaufort wind scale, on a consumption of about  *4,0*          ~~long~~*/metric*   19
tons of *gasoil and 0,40 mton in port*                                                                                          20

* Delete as appropriate.                                                                                                                   21
For further description see Appendix "A" (if applicable)                                                                    22

1.    <u>Duration</u>                                                                                                                         23

The Owners agree to let and the Charterers agree to hire the Vessel from the time of delivery for a period   24
                                                                                                                                                      25.
of 6 month  +/- 30 days on final Period.                                                                                             26
Option to be declared 45 days prior termination of actual Period.                                                         27
                                                              within below mentioned trading limits.                            28

2.    Delivery                                                                                    29

*Dropping outgoing Pilot Husum anytime Day/ Night/*                                              30
                                                                                                 31
                                                                                                 32
                                                              The vessel on her delivery         33
shall be ready to receive cargo with clean-swept holds and tight, staunch, strong and in every way fitted   34
for ordinary cargo service, having water ballast and with sufficient power to operate all cargo-handling gear   35
simultaneously.                                                                                  36

The Owners shall give the Charterers not less than **3 working**            days notice of expected date of   37
delivery.                                                                                        38

3.    On-Off Hire Survey                                                                          39

Prior to delivery and redelivery the parties shall, unless otherwise agreed, each appoint surveyors, for their   40
respective accounts, who shall not later than at first loading port/last discharging port respectively, conduct   41
joint on-hire/off-hire surveys, for the purpose of ascertaining quantity of bunkers on board and the condition   42
of the Vessel. A single report shall be prepared on each occasion and signed by each surveyors, without   43
prejudice to his right to file a separate report setting forth items upon which the surveyors cannot agree.   44
If either party fails to have a representative attend the survey and sign the joint survey report, such party   45
shall nevertheless be bound for all purposes by the findings in any report prepared by the other party.   46
On-hire survey shall be on Charterers' time and off-hire survey on Owners' time.                  47

4.    Dangerous Cargo/Cargo Exclusions                                                            48

(a) The Vessel shall be employed in carrying lawful merchandise excluding any goods of a dangerous,   49
injurious, flammable or corrosive nature unless carried in accordance with the requirements or    50
recommendations of the competent authorities of the country of the Vessel's registry and of ports of   51
shipment and discharge and of any intermediate countries or ports through whose waters the Vessel must   52
pass. Without prejudice to the generality of the foregoing, in addition the following are specifically   53
excluded: livestock of any description, arms, ammunition, explosives, nuclear and radioactive materials,   54
*asphalt in bulk, cargoes for which vessel has no stability*                                      55
*calculation/permission for loading. Cargo classed IMO 7 is subject of Owners approval.*          56
*Bulk cargoes should be loaded only rarely with owners consent*                                   57
                                                                                                 58
                                                                                                 59
                                                                                                 60
                                                                                                 61
                                                                                                 62
                                                                                                 63
                                                                                                 64

(b) If IMO-classified cargo is agreed to be carried, the amount of such cargo shall be limited to   65
                    tons and the Charterers shall provide the Master with any evidence he may     66
reasonably require to show that the cargo is packaged, labeled, loaded and stowed in accordance with IMO   67
regulations, failing which the Master is entitled to refuse such cargo or, if already loaded, to unload it at   68
the Charterers' risk and expenses.                                                                69

**5.**     Trading Limits                                                                                     70

The Vessel shall be employed in such lawful trades between safe ports and safe places              71
within *Continent, (until and including Hamburg), Mediterranean sea upto and incl Morocco,*        72
*Black sea incl. Azov sea (ice period mpermitting* excluding                                       73
*Israeli ports*                                                                                    74
                                                                                                   75
                                                                 as the Charterers shall direct.   76

**6.**     Owners to Provide                                                                                  77

The Owners shall provide and pay for the insurance of the Vessel, except as otherwise provided, and for   78
all provisions, cabin, deck, engine-room and other necessary stores, including boiler water; shall pay for   79
wages, consular shipping and discharging fees of the crew and charges for port services pertaining to the   80
crew; shall maintain the Vessel's class and keep her in a thoroughly efficient state in hull, machinery and   81
Equipment for and during the service, and have a full complement of officers and crew.               82

**7.**     Charterers to Provide                                                                              83

The Charterers, while the Vessel is on hire, shall provide and pay for all the bunkers except as otherwise   84
agreed; shall pay for port charges (including compulsory watchmen and cargo watchmen and ~~compulsory~~   85
~~garbage disposal~~), all communication expenses pertaining to the Charterers' business at cost, pilotages,   86
towages, agencies, commissions, consular charges (except those pertaining to individual crew members   87
or flag of the Vessel), and all other usual expenses except those stated in Clause 6, but when the Vessel   88
puts into a port for causes for which the Vessel is responsible (other than by stress of weather), then all   89
such charges incurred shall be paid by the Owners. Fumigations ordered because of illness of the crew   90
shall be for the Owners' account. Fumigations ordered because of cargoes carried or ports visited while   91
the Vessel is employed under this Charter Party shall be for the Charterers' account. All other fumigations   92
shall be for the Charterers' account after the Vessel has been on charter for a continuous period of six   93
months or more.  *Cost for garbage removal sustained is to be born 50/50 by owners/charterers.*      94

The Charterers shall provide and pay for necessary dunnage and also any extra fittings requisite for a   95
special trade or unusual cargo, but the Owners shall allow them use any dunnage already aboard   96
the Vessel. Prior to redelivery the Charterers shall remove their dunnage and fittings at their cost and in   97
their time.                                                                                           98

**8.**     Performance of Voyages                                                                             99

(a) The Master shall perform the voyages with due dispatch, and shall render all customary assistance   100
with the Vessel's crew. The Master shall be conversant with the English language and (although   101
appointed by the Owners) shall be under the orders and directions of the Charterers as regards   102
Employment and agency; and the Charterers shall perform all cargo handling, including but not limited to   103
loading, stowing, ~~trimming, lashing, securing, dunnaging, unlashing~~, discharging, ~~and tallying~~, at their risk   104
and expenses, under the supervision of the Master.                                                   105
*Lashing/securing/dunnaging operations performed by the crew are made under*
*Master supervision.*

(b) If the Charterers shall have reasonable cause to be dissatisfied with the conduct of the Master or   106
officers, the Owners shall, on receiving particulars of the complaint, investigate the same, and if   107
necessary, make a change in the appointments.                                                        108

9.        Bunkers                                                                                                                        109

(a) The Charterers on delivery, and the Owners on redelivery, shall take over and pay for all fuel and              110
diesel oil remaining on board the Vessel as hereunder. The Vessel shall be delivered with:                          111
~~long+/metric+ tons of fuel oil at the price of~~                                              ~~per ton;~~          112
*about 75*      tons of diesel oil at the price of  *US$ 290,00*                      per ton. The Vessel shall       113
be redelivered with:                      ~~tons of fuel oil at the price of~~                    ~~per ton;~~        114
*min 75*                  tons of diesel oil at the price of  *US$ 290,00*                    per ton.                115

*Same tons apply throughout this clause.*                                                                            116

(b) The Charterers shall supply bunkers of a quality suitable for burning in the Vessel's engines                   117
and auxiliaries and which conform to the specification(s) as set out in Appendix A.                                  118

The Owners reserve their right to make a claim against the Charterers for any damage to the main engines            119
or the auxiliaries caused by the use of unsuitable fuels or fuels not complying with the agreed                     120
specification(s). Additionally, if bunker fuels supplied do not confirm with the mutually agreed                    121
specification(s) or otherwise prove unsuitable for burning in the Vessel's engines or auxiliaries, the Owners       122
shall not be held responsible for any reduction in the Vessel's speed performance and/or increased bunker           123
consumption, nor for any time lost and any other consequences.                                                      124

.10.        Rate of Hire/Redelivery Areas and Notices                                                                125

The Charterers shall pay for the use and hire of the said Vessel at the rate of $                                   126
~~U.S. currency~~, daily, ~~or $~~                           ~~U.S. currency per ten on the Vessel's total deadweight~~   127
~~carrying capacity, including bunkers and stores, on~~                        ~~summer freeboard, per 30 days,~~    128
commencing on and from the day of her delivery, as aforesaid, and at and after the same rate for any part           129
of a month; hire shall continue until the hour of the day of her redelivery in like good order and condition,       130
Ordinary wear and tear excepted, to the Owners (unless Vessel lost) at                                              131
                                                                                                                     132
                                                                                                                     133
                                                                 unless otherwise mutually agreed.                   134

The Charterers shall give the Owners not less than            *10*                days notice of the Vessel's        135
expected date and probable port of redelivery.                                                                      136

For the purpose of hire calculations, the times of delivery, redelivery or termination of charter shall be          137
adjusted to GMT.                                                                                                     138

11.        Hire Payment                                                                                              139

(a)        *Payment*                                                                                                 140

Payment of Hire shall be made so as to be received by the Owners or their designated payee in                       141
*US currency*                        .viz  *to the bank account, which to be indicated into the*                    142
*relevant hire invoices*                                                                                            143
                                                                                                                     144
                                                                                                   in                145

*USA*                                  Currency, ~~or in United States Currency~~, in funds available to the    146
Owners on the due date, 15 days in advance and for the last month or part of same the approximate    147
amount of hire, and should same not cover the actual time, hire shall be paid for the balance day by day    148
as it becomes due, if so required by the Owners. Failing the punctual and regular payment of the hire,    149
or on any fundamental breach whatsoever of this Charter Party, the Owners shall be at liberty to    150
withdraw the Vessel from the service of the Charterers without prejudice to any claims they (the Owners)    151
May otherwise have on the Charterers.    152

At any time after the expiry of the grace period provided in Sub-clause 11 (b) hereunder and while the    153
hire is outstanding, the Owners shall, without prejudice to the liberty to withdraw, be entitled to withhold    154
the performance of any and all of their obligations hereunder and shall have no responsibility whatsoever    155
for any consequences thereof, in respect of which the Charterers hereby indemnify the Owners, and hire    156
shall continue to accrue and any extra expenses resulting from such withholding shall be for the    157
Charterers' account.    158

(b)      *Grace Period*                                                                                   159

Where there is failure to make punctual and regular payment of hire due to oversight, negligence, errors    160
or omissions on the part of the Charterers or their bankers, the Charterers shall be given by the Owners    161
*3*         clear banking days (as recognized at the agreed place of payment) written notice to rectify the    162
failure, and when so rectified within those  *3*        days following the Owners' notice, the payment shall    163
stand as regular and punctual.    164

Failure by the Charterers to pay the hire  *3*               days of their receiving the Owners' notice as    165
provided herein, shall entitle the Owners to withdraw as set forth in Sub-clause 11 (a) above.    166

(c)      *Last Hire Payment*                                                                              167

Should the Vessel be on  her voyage towards port of redelivery at the time the last and/or the penultimate    168
payment of hire is/are due, said payment(s) is/are to be made for such length of time as the Owners and    169
the Charterers may agree upon as being the estimated time necessary to complete the voyage, and taking    170
into account bunkers actually on board, to be taken over by the Owners and estimated disbursements for    171
the Owners' account before redelivery. Should same not cover the actual time, hire is to be paid for the    172
balance, day by day, as it becomes due. When the Vessel has been redelivered, any difference is to be    173
refunded by the Owners or paid by the Charterers, as the case may be.    174

(d)      *Cash Advances*                                                                                  175

Cash for the Vessel's ordinary disbursements at any port may be advanced by the Charterers, as required    176
by the Owners, subject to 2 ¼ percent commission and such advances shall be deducted from the hire.    177
The Charterers, however, shall in no way be responsible for the application of such advances.    178

12.      **Berths**                                                                                       179

The Vessel shall be loaded and discharged in any safe dock or at any safe berth or safe place that    180
Charterers or their agents may direct, provided the Vessel can safely enter, lie and depart always afloat    181
at any time of tide.    182

### 13.    Spaces Available                                                                   183

(a) The whole reach of the Vessel's holds, decks, and other cargo spaces (not more that she can       184
reasonably and safely stow and carry), also accommodations for supercargo, if carried, shall be at the   185
Charterers' disposal, reserving only proper and sufficient space for the Vessel's officers, crew, tackle,   186
apparel, furniture, provisions, stores and fuel.                                                     187

(b) In the event of deck cargo being carried, the Owners are to be and are hereby indemnified by the ·   188
Charterers for any loss and/or damage and/or liability of whatsoever nature caused to the Vessel as a   189
result of the carriage of deck cargo and which would not have arisen had deck cargo not been loaded.   190

### 14.    Supercargo and Meals                                                              191

The Charterers are entitled to appoint a supercargo, who shall accompany the Vessel at the Charterers'   192
risk and see that voyages are performed with due dispatch. He is to be furnished with free         193
accommodation and same fare as provided for the Master's table, the Charterers paying at the rate of   194
*US$ 5,-*                   per day. The Owners shall victual pilots and customs officers, and also, when   195
authorized by the Charterers or their agents, shall victual tally clerks, stevedore's foreman, etc.,      196
Charterers paying at the rate of   *US$ 3,-*      per meal for all such victualling.                    197

### 15.    Sailing Orders and Logs                                                           198

The Charterers shall furnish Master from time to time with all requisite instructions and sailing       199
directions, in writing, in the English language, and the Master shall keep full and correct deck and engine   200
logs of the voyage or voyages, which are to be patent to the Charterers or their agents, and furnish the   201
Charterers, their agents or supercargo, when required, with a true copy of such deck and engine logs,   202
showing the course of the Vessel, distance run and the consumption of bunkers. Any log extracts       203
required by the Charterers shall be in the English language.                                        204

### 16.    Delivery/Canceling                                                                205

If required by the Charterers, time shall not commence before                         and should the   206
Vessel not be ready for delivery on or before                  but not later than       hours.        207
the Charterers shall have the option of canceling this Charter Party.                                  · 208

#### *Extension of Canceling*                                                                209

If the Owners warrant that, despite the exercise of due diligence by them, the Vessel will not be ready   210
for delivery by the canceling date, and provided the Owners are able to state with reasonable certainty   ·211
the date on which the Vessel will be ready, they may, at the earliest ~~seven~~ *3* days before the Vessel is   212
expected to sail for the port or place of delivery, require the Charterers to declare whether or not they will   213
cancel the Charter Party. Should the Charterers elect not to cancel, or should they fail to reply within two   ·214
days or by the canceling date, whichever shall first occur, then the seventh day after the expected date   215
of readiness for delivery as notified by the Owners shall replace the original canceling date. Should the   216
Vessel be further delayed, the Owners shall be entitled to require further declarations of the Charterers   217
in accordance with this Clause.                                                                 218

17.    Off Hire                                                                                                                  219

In the event of loss of time from deficiency and/or default and/or strike of officers or crew, or deficiency        220
of stores, fire, breakdown of, or damages to hull, machinery or equipment, grounding, detention by the              221
arrest of the Vessel, (unless such arrest is caused by events for which the Charterers, their servants,             222
agents or subcontractors are responsible), or detention by average accidents to the Vessel or cargo unless          223
resulting from inherent vice, quality or defect of the cargo, drydocking for the purpose of examination or          224
painting bottom, or by any other similar cause preventing the full working of the Vessel, the payment of            225
hire and overtime, if any, shall cease for the time thereby lost. Should the Vessel deviate or put back             226
during a voyage, contrary to the orders or directions of the Charterers, for any reason other than accident         227
to the cargo or where permitted in lines 257 to 258 hereunder, the hire is to be suspended from the time            228
of her deviating or putting back until she is again in the same or equidistant position from the destination        229
and the voyage resumed therefrom. All bunkers used by the Vessel while off hire shall be for the Owners'            230
account. In the event of the Vessel being driven into port or to anchorage through stress of weather,               231
trading to shallow harbors or to river or ports with bars, any detention of the Vessel and/or expenses              232
resulting from such detention shall be for the Charterers' account. If upon the voyage the speed be                 233
reduced by defect in, or breakdown of, any part of her hull, machinery or equipment, the time so lost, and          234
the cost of any extra bunkers consumed in consequence thereof, and all extra proven expenses may be                 235
deducted from the hire.                                                                                             236

18.    Sublet                                                                                                                    237

Unless otherwise agreed, the Charterers shall have the liberty to sublet the Vessel for all or any part of          238
the time covered by this Charter Party, but the Charterers remain responsible for the fulfillment of this           239
Charter Party.                                                                                                     240

19.    Drydocking                                                                                                                241

The Vessel was last drydocked *in october 2003*                                                                     242

*(a) The Owners shall have the option to place the Vessel in drydock during the currency of this Charter            243
at a convenient time and place, to be mutually agreed upon between the Owners and the Charterers, for               244
bottom cleaning and painting and/or repair as required by class or dictated by circumstances.                      245

*(b) Except in case of emergency no drydocking shall take place during the currency of this Charter                 246
Party.                                                                                                             247

* *Delete as appropriate*                                                                                           248

20.    Total Loss                                                                                                                249

Should the Vessel be lost, money paid in advance and not earned (reckoning from the date of loss or                 250
being last heard of) shall be returned to the Charterers at once.                                                   251

21.    Exceptions                                                                                                                252

The act of God, enemies, fire, restraint of princes, rulers and people, and all dangers and accidents of the        253
seas, rivers, machinery, boilers, and navigation, and errors of navigation throughout this Charter, always          254
mutually excepted.                                                                                                 255

**22.**    Liberties                                                                                          256

The Vessel shall have the liberty to sail with or without pilots, to tow and to be towed, to assist vessels         257
in distress, and to deviate for the purpose of saving life and property.                                            258

**23.**    Liens                                                                                             259

The Owners shall have a lien upon all cargoes and all sub-freights and/or sub-hire for any amounts due              260
under this Charter Party, including general average contributions, and the Charterers shall have a lien on          261
the Vessel for all monies paid in advance and not earned, and any overpaid hire or excess deposit to be            262
returned at once.                                                                                                   263

The Charterers will not directly or indirectly suffer, not permit to be continued, any lien or encumbrance,         264
which might have priority over the title and interest of the Owners in the Vessel. The Charterers                   265
undertake that during the period of this Charter party, they will not procure any supplies or necessaries          266
or services, including any port expenses and bunkers, on the credit of the Owners or in the Owners' time.          267

**24.**    Salvage                                                                                           268

All derelicts and salvage shall be for the Owners' and the Charterers' equal benefit after deducting               269
Owners' and Charterers' expenses and crew's proportion.                                                            270

**25.**    General Average                                                                                   271

General average shall be adjusted according to York-Antwerp Rules 1974, as amended 1990, or any                    272
subsequent modification thereof, in *London*                    and settled in *US$*                               273
currency.                                                                                                           274

The Charterers shall procure that all bills of lading issued during the currency of the Charter Party will          275
contain a provision to the effect that general average shall be adjusted according to York-Antwerp Rules           276
1974, as amended 1990, or any subsequent modification thereof and will include the "New Jason                       277
Clause" as per Clause 31.                                                                                           278

Time charter hire shall not contribute to general average.                                                         279

**26.**    Navigation                                                                                        280

Nothing herein stated is to be construed as a demise of the Vessel to the Time Charterers. The Owners              281
shall remain responsible for the navigation of the Vessel, acts of pilots and tug boats, insurance, crew,         282
and all other matters, same as when trading for their own account.                                                 283

**27.**    Cargo Claims                                                                                      284

Cargo claims ~~as between the Owners and the Charterers shall be settled in accordance with the Inter-Club~~        285
~~New York Produce Exchange Agreement of February 1970, as amended May, 1984, or any subsequent~~                  286
~~modification or replacement thereof.~~ *shall be covered/settled by Owners P&I Club. Charterers will have*        287
*the benefit of Owners P&I Club. But the Charterers will be liable for the "franchises" imposed to*
*Owners by their P&I Club.*

## 28.    Cargo Gear and Lights                                                                    288

The Owners shall maintain the cargo handling gear of the Vessel which is as follows:            289
290
291
292
providing gear (for all derricks or cranes) capable if lifting capacity as described. The Owners shall also    293
provide on the Vessel for night work lights as on board, but all additional lights over those on board shall    294
be at the Chaterers' expenses. The Charterers shall have the use of any gear on board the Vessel. If    295
required by the Charterers, the Vessel shall work night and day and all cargo handling gear shall be at the    296
Charterers' disposal during loading and discharging. In the event of disabled cargo handling gear, or    297
insufficient power to operate the same, the Vessel is to be considered to be off hire to the extent that    298
time is actually lost to the Charterers and the Owners to pay stevedore stand-by charges occasioned    299
thereby, unless such disablement or insufficiency of power is caused by the Charterers' stevedores. If    300
required by the Charterers, the Owners shall bear the cost of hiring shore gear in lieu thereof, in which    301
case the Vessel shall remain on hire.                                                              302

## 29.    Crew Overtime                                                                            303

In lieu of any overtime payments to officers and crew for work ordered by the Charterers or their agents,    304
the Charterers shall pay the Owners, concurrently with the hire                        per month    305
or pro rata. *Officers' and crew's services including overtime work cover:*                       306
*a) raising/lowering gear*
*b) opening/closing hatches*
*c) maintaining power for cargo operations*
*d) shaping up hatches and cranes in order to commence cargo operations on arrival at berth or place*
*e) lashing and securing of cargo (on deck and under deck), collecting and preparing of lashing material and dunnage after gang work.*
*f) unlashing of cargo*

*their mutual negotiations/agreements.*

## 30.    Bills of Lading                                                                          307

(a) The Master shall sign the bills of lading or waybills for cargo as presented in conformity with mates    308
or tally clerk's receipts. However, the Charterers may sign bills of lading or waybills on behalf of the    309
Master, with the Owner's prior written authority, always in conformity with mates or tally clerk's receipts.    310
*Master / Owners to be responsible for number of packages loaded as indicated in manifest/bills of lading.*

(b) All bills of lading or waybills shall be without prejudice to this Charter Party and  the Charterers shall    311
indemnify the Owners against all consequences or liabilities which may arise from any inconsistency    312
between this Charter Party and any bills of lading or waybills signed by the Charterers or by the Master    313
at their request.                                                                                  314

(c) Bills of lading covering deck cargo shall be claused: "Shipped on deck at Charterers', Shippers' and    315
Receivers' risk, expense and responsibility, without liability on the part of the Vessel, or her Owners for    316
any loss, damage, expense or delay howsoever caused."                                              317

harmless and shall keep them indemnified against all claims whatsoever which may arise and be made    360
against them individually or jointly. Furthermore, all time lost and all expenses incurred, including fines,    361
as a result of the Charterers' breach of the provisions of this clause shall be for the Charterers' account    362
and the Vessel shall remain on hire.    363

Should the Vessel be arrested as a result of the Charterers' non –compliance with the provisions of this    364
clause, the Charterers shall at their expense take all reasonable steps to secure that within a reasonable    365
time the Vessel is released and at their expense put up the bails to secure release of the Vessel.    366

The Owners shall remain responsible for all time lost and all expenses incurred, including fines, in the    367
event that unmanifested narcotic drugs and marijuana are found in the possession or effects of the    368
Vessel's personnel."    369

and    370

(e)        WAR CLAUSES    371
"(i) No contraband of war shall be shipped. The Vessel shall not be required, without the consent of the    372
Owners, which shall be unreasonably withheld, to enter any port or any zone which is involved in a state    373
of war, warlike operations, or hostilities, civil strife, insurrection or piracy whether there be a declaration    374
of war or not, where the Vessel, cargo or crew might reasonably be expected to be subject of capture,    375
seizure or arrest, or to a hostile act by a belligerent power (the term "power" meaning any de jure or de    376
facto authority or any purported governmental organization maintaining naval, military or air forces).    377

(ii) If such consent is given by the Owners, the Charterers will pay the provable additional cost of insuring    378
the Vessel against hull war risks in an amount equal to the value under her ordinary hull policy but not    379
exceeding a valuation of                                    In addition, the Owners may purchase and the    380
Charterers will pay for war risk insurance on ancillary risks such as loss of hire, freight disbursements,    381
total loss, blocking and trapping, etc. If such insurance is not obtainable commercially or through a    382
Government program, the Vessel shall not be required to enter or remain at any such port or zone.    383

(iii) In the event of the existence of the conditions described in (i) subsequent to the date of this Charter,    384
or while the Vessel is on hire under this Charter,  the Charterers shall, in respect of voyages to any such    385
port or zone assume the provable additional cost of wages and insurance properly incurred in connection    386
with master, officers and crew as a consequence of such war, warlike operations or hostilities.    387

(iv) Any war bonus to officers and crew due to the Vessel's trading or cargo carried shall be for the    388
Charterers' account."    389

## 32.        War Cancellation    390

In the event of the outbreak of war (whether there be a declaration of war or not) between any two or    391
more of the following countries:    392
                                                                            393
                                                                            394
                                                                            395
either the Owners or the Charterers may cancel this Charter Party. Whereupon, the Charterers shall    396
redeliver the Vessel to the Owners in accordance with Clause 10; if she has cargo on board, after    397
discharge thereof at destination, or, if debarred under this Clause from reaching or entering it, at a near    398
open and safe port as directed by the Owners; or, if she has no cargo on board, at the port at which she    399
then is; or, if at sea, at a near open and safe port as directed by the Owners. In all cases hire shall    400
continue to be paid in accordance with Clause 11 and except as aforesaid all other provisions of this    401
Charter Party shall apply until redelivery.    402

**33.**     Ice                                                                                                    403

The Vessel shall not be required to enter or remain in any icebound port or area, nor any port or area          404
where lights or lightships have been or are about to be withdrawn by reason of ice, nor where there is          405
risk that in the ordinary course of things the Vessel will not be able on account of ice to safely enter and    406
remain in the port or area or to get out after having completed loading or discharging. Subject to the          407
Owners' prior approval the Vessel is to follow ice-breakers when reasonably required with regard to her         408
size, construction and ice class.                                                                               409

**34.**     Requisition                                                                                          410

Should the Vessel be requisitioned by the government of the Vessel's flag during the period of this Charter     411
Party, the Vessel shall be deemed to be off hire during the period of such requisition, and any hire paid       412
by the said government in respect of such requisition period shall be retained by the Owners. The period        413
during which the Vessel is on requisition to the said government shall count as part of the period provided     414
for in this Charter Party.                                                                                      415

If the period of requisition exceeds  **3**                           months, either party shall have the option   416
of canceling this Charter Party and no consequential claim may be made by either party.                        417

**35.**     **Stevedore Damage**                                                                                418

Notwithstanding anything contained herein to the contrary, the Charterers shall pay for any and all            419
damage to the Vessel caused by stevedores provided the Master has notified the Charterers and/or their         420
agents in writing as soon as practical but not later than 48 hours after any damage is discovered. Such        421
Notice to specify the damage in detail and to invite Charterers to appoint a surveyor to assess the extent     422
of such damage.                                                                                                 423

(a) In case of any and all damage(s) affecting the Vessel's seaworthiness and/or the safety of the crew        424
and/or affecting the trading capabilities of the Vessel, the Charterers shall immediately arrange for repairs   425
of such damage(s) at their expense and the Vessel is to remain on hire until such repairs are completed        426
and id required passed by the Vessel's classification society.                                                 427

(b) Any and all damage(s) not described under point (a) above shall be repaired at the Charterers' option,      428
before or after redelivery concurrently with the Owners' work. In such case no hire and/or expenses will       429
be paid to the Owners except and insofar as the time and/or the expenses required for the repairs for          430
which the Charterers are responsible, exceed the time and/or expenses necessary to carry out the               431
Owners' work.                                                                                                   432

**36.** .   Cleaning of Holds                                                                                   433

The ~~Charterers~~ _Owners_ shall provide ~~and pay extra~~ for sweeping and/or washing and/or cleaning of holds   434
between                                                                                                         
voyages and/or between cargoes provided such work can be undertaken by the crew and is permitted by            435
local regulations, ~~at the rate of~~                       ~~per hold.~~ **Charterers to pay monthly sweeping fee of US$**   436
**400,-.**                                                                                                      
In connection with any such operation, the Owners shall not be responsible if the Vessel's holds are not       437
accepted or passed by the port or any other authority. The Charterers shall have the option to re-deliver      438
the Vessel with unclean/unswept holds against a lumpsum payment of   **US$ 0,00**     in lieu of cleaning.      439

37.      Taxes                                                                        440

Charterers to pay all local, State, Nautical taxes and/or dues assessed on the Vessel or the Owners      441
resulting from the Charterers' orders herein, whether assessed during or after the currency or this Charter      442
Party including any taxes and/or dues on cargo and/or freights and/or sub-freights and/or hire (excluding      443
taxes levied by the country of the flag of the Vessel or the Owners).      444

38.      Charterers' Colors                                                           445

The Charterers shall have the privilege of flying their own house flag and painting the Vessel with their      446
own markings. The Vessel shall be repainted in the Owners' colors before termination of the Charter      447
Party. Cost and time of painting, maintaining and repainting those changes effected by the Charterers      448
shall be for the Charterers' account.      449

39.      Laid Up Returns                                                              450

The Charterers shall have the benefit of any return insurance premium receivable by the Owners from their      451
underwriters as and when received from underwriters by reason of the Vessel being in port for a minimum      452
Period of 30 days if on full hire for this period or pro rata for the time actually on hire.      453

40.      Documentation                                                               454

The Owners shall provide any documentation relating to the Vessel that may be required to permit the      455
Vessel to trade within the agreed trade limits, including, but not limited to certificates of financial      456
responsibility for oil pollution, provided such certificates are obtainable from the Owners'      457
P&I club, valid international tonnage certificate, Suez and Panama tonnage certificates, valid certificate      458
of registry and certificates relating to the strength and/or serviceability of the Vessel's gear.      459

41.      Stowaways                                                                    460

(a)      (i) The Charterers warrant to exercise due care and diligence in preventing stowaways in gaining      461
access to the Vessel by means of secreting away in the goods and/or containers shipped by the      462
Charterers.      463

(ii) If, despite the exercise of due care and diligence by the Charterers, stowaways have gained      464
access to the Vessel by means of secreting away in the goods and/or containers shipped by the      465
Charterers, this shall amount to breach of charter for the consequences of which the Charterers      466
shall be liable and shall hold the Owners harmless and shall keep them indemnified against all      467
claims whatsoever which may arise and be made against them. Furthermore, all time lost and all      468
expenses whatsoever and howsoever incurred, including fines, shall be for the Charterers' account      469
and the Vessel shall remain on hire.      470

(iii) Should the Vessel be arrested as a result of the Charterers' breach of charter according to      471
sub-clause (a)(ii) above, the Charterers shall take all reasonable steps to secure that, within a      472
reasonable time, the Vessel is released and at their expense put up bail to secure release of the      473
Vessel.      474

(b)    (i) if, despite the exercise of due care and diligence by the Owners, stowaways have gained     475
access to the Vessel by means other than secreting away in the goods and/or containers shipped     476
by the Charterers, all time lost and all expenses whatsoever and howsoever incurred, including     477
fines, shall be for the Owners' account and the Vessel shall be off hire.     478

(iii) Should the Vessel be arrested as a result of stowaways having gained access to the Vessel     479
by means other than secreting away in the goods and/or containers shipped by the Charterers,     480
the Owners shall take all reasonable steps to secure that, within a reasonable time, the Vessel     481
is released and at their expense put up bail to secure release or the Vessel.     482

## 42.    Smuggling     483

In the event of smuggling by the Master, Officers and/or crew, the Owners shall bear the cost of any     484
fines, taxes, or imposts levied and the Vessel shall be off hire for any time lost as a result thereof.     485

## 43.    Commissions     486

A commission of     percent is payable by the Vessel and the Owners to     487
488
489
490
on hire earned and paid under this Charter, and also upon any continuation or extension of his Charter.     491

## 44.    Address Commission     492

An address commission of *2.50*   percent is payable to *the Charterers*     493
494
495
on hire earned and paid under this Charter.     496

## 45.    Arbitration     497

(a)    NEW YORK     498
~~All disputes arising out of this contract shall be arbitrated at New York in the following manner, and~~     499
~~subject t U.S. Law:~~     500

~~One Arbitrator is to be appointed by each of the parties hereto and a third by the two so chosen. Their~~     501
~~decision or that if any two of them shall be final, and for the purpose of enforcing any award, this~~     502
~~agreement may be made a rule of the court. The Arbitrators shall be commercial men, conversant with~~     503
~~shipping matters. Such Arbitration is to be conducted in accordance with the rules of the Society of~~     504
~~Maritime Arbitrators Inc.~~     505

~~For disputes where the total amount claimed by either party does not exceed US $~~     506
~~the arbitration shall be conducted in accordance with the Shortened Arbitration Procedure of the Society~~     507
~~of Maritime Arbitrators Inc.~~     508

(b)        LONDON

All disputes arising out of this contract shall be arbitrated at London and, unless the parties agree
forthwith on a single Arbitrator, be referred to the final arbitrament of two Arbitrators carrying on business
in London who shall be members of the Baltic Mercantile & Shipping Exchange and engaged in Shipping,
one to be appointed by each of the parties, with power to such Arbitrators to appoint an Umpire. No
award shall be questioned or invalidated on the ground that any of the Arbitrators is not qualified as
above, unless objection to his action be taken before the award is made. Any dispute arising hereunder
shall be governed by English Law.

For disputes where the total amount claimed by either party does not exceed *US $ 30000,- (twenty
thousand)* ++
the arbitration shall be conducted in accordance with the Small Claims Procedure of the London Maritime
Arbitrators Association.

* Delete para (a) or (b) as appropriate

** Where no figure is supplied in the blank space this provision only shall be void but the other provisions
of this clause shall have full force and remain in effect.

~~If mutually agreed, clauses~~ ~~to~~ ~~, both inclusive, as attached hereto are fully
incorporated in this Charter Party.~~

509
510
511
512
513
514
515
516

517

518
519

520

521
522

523
524

## APPENDIX "A"

525

To Charter Party dated  *December 18th 2003*
Between *Vista Maritime Copany sa / Panama as*                          Owners
And  *ANTARES Transport GmbH  as*                                     Charterers

**Further details of the Vessel:**

526
527
528

529

AS CHARTERERERS:                                          AS OWNERS:

# EXHIBIT 2



# MASTROGIORGIS SHIPPING COMPANY LTD

7, EFPLIAS STREET - 18537 PIRAEUS - GREECE
TEL: +30 210 4184025-8 FAX: +30 210 4537019
e-mail: mastrogi@otenet.gr

JULY 11, 2008

To: Antares Transport GMBH, Germany

Re: MV Fanara- Antares - CP DD 21/06/2007
Revised Final Hire Statement

Vessel redelivered DLOSP Oran on 23/10/2007 at 23:20 utc or / 24/10/2007 at 00:20 lt. Bunkers on board were 69,358 mt of IFO and 27,70 mt of MGO. Charterers are kindly requested to arrange hire payment as per following final hire statement in accordance with CP terms

| | | USD Debit USD | Credit USD |
|---|---|---|---|
| From: | Delivery | 6/22/2007 16:10 GMT | |
| Until: | | 10/23/2007 23:20 GMT | |
| TTL DAYS | | 123.2986 | |
| | | | |
| Days off-hire FM: | 7/22/2007 9:00 | | |
| Crane nbr 3 out of order 1/4 deduction as per relevant clause of our cp | | | |
| TO: | 7/22/2007 12:30 | 0.0384583 | 25% |
| FM: | 7/23/2007 13:00 | | |
| TO: | 7/23/2007 13:30 | 0.0052083 | 25% |
| FM: | 7/24/2007 7:45 | | |
| TO: | 7/24/2007 12:30 | 0.0494792 | 25% |
| FM: | 7/24/2007 13:00 | | |
| TO: | 7/24/2007 17:45 | 0.0494792 | 25% |
| FM: | 7/24/2007 17:45 | | |
| TO: | 7/25/2007 8:00 | 0.0494792 | 25% |
| FM: | 7/25/2007 12:30 | | |
| TO: | 7/25/2007 12:30 | 0.0468750 | 25% |
| FM: | 7/25/2007 13:00 | | |
| TO: | 7/25/2007 17:45 | 0.0494792 | 25% |

OFF-HIRE ORAN (Sugar)

FM:    9/15/2007 9:30
TO:    9/15/2007 13:00

| Days on-hire | | | |
|---|---|---|---|
| Hire per day: | 123.02517361 | | |
| | 3250 | | |
| Less Comm on hire: | 4.00 % | | |

0.0364563    25%    US$

| | | | | | |
|---|---|---|---|---|---|
| IFO ON DELY | | mt: | 109.4150 | 400 | 43,766.00 |
| MGO ON DELY | | mt: | 34.7300 | 666 | 23,095.45 |
| IFO ON RE-DELY | | mt: | 69.3580 | 400 | 27,743.20 |
| MGO ON RE-DELY | | mt: | 27.7000 | 685 | 18,420.50 |

399,831.81

15,993.27

CIEN/

750.00    pmpr    3,033.50

INTERMEDIATE HOLDS CLEANING
(Pasajes- Sousse 7/2007)
(La Specia- Alger 7/2007)
(Tarragona/casablanca 8/2007)
(Casablanca / rochefort 8/2007)
(Rouen / oran 9/2007)
(Seville / oran 9/2007)
(Seville / Skikda 10/2007)

700.00
700.00
700.00
700.00
700.00
700.00
700.00

ILOHC

1500.00

**LESS:**
MGO consumed during off-hire
DEDUCTABLE D/A DIFFERENCE AT PASAJES 11.12.2006 EURO 339,19 EQUIV TO:

0.2369792 days    x    0.8    665    126.07
                                      463.27

MGO consumed during off-hire at Oran

0.0364563 days    x    0.8    665    19.40

**Owners expenses:**
Oran, Sep/ 07 - Shore crane $2250 as agreed

2250.00

Oran, Oct/ 07 - Shore crane $2250 as agreed                                          2250.00

Claim at Oran on 07/09/2007, due to cargo shortage                                        5500
(Reverting with the exact amount)

Hire Received:

| | |
|---|---|
| 6/26/2007 | 82,627.50 |
| 7/9/2007 | 50,492.75 |
| 7/20/2007 | 47,875.00 |
| 8/5/2007 | 38,298.06 |
| 8/20/2007 | 47,550.00 |
| 9/5/2007 | 46,336.73 |
| 9/10/2007 | 2,517.47 |
| 9/21/2007 | 47,500.00 |

                                                                            430,463.22    481,626.76

Amount Due to Owners   USD:      | 51,163.54 |

Please arrange payment of the above amount to Owners' bank as follows:

HSBC BANK PLC.,
93, AKTI MIAOULI
185 35 PIRAEUS
GREECE
TELEX: 211788 MIDP GR
SWIFT: MIDLGRAA
FOR CREDIT THE ACCOUNT OF V.BULKERS SA
ACCOUNT NO. 001-048677-036
IBAN: GR21 0710 0010 0000 0104 8677 036
REF: 'M/V FANARA/ ANTARES'

CORRESPONDING BANK IN NY
HSBC BANK USA NEW YORK
SWIFT: MRMDUS33
ABA : 021001088
FOR CREDIT THE ACCOUNT NUMBER 000-04779-1

# EXHIBIT 3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

AURORA MARITIME INC.,

                     Plaintiff,

    - against -

ANTARES TRANSPORT GmbH,

                     Defendant.

---------------------------------------------------------------X

:    08 CV _____

:    ECF CASE

## AFFIDAVIT IN SUPPORT OF PRAYER FOR MARITIME ATTACHMENT

State of Connecticut  )
                )   ss:  Town of Southport
County of Fairfield  )

      Kevin J. Lennon, being duly sworn, deposes and says:

    1.    I am a member of the Bar of this Court and represent the Plaintiff herein. I am familiar with the facts of this case and make this Affidavit in support of Plaintiff's prayer for the issuance of a Writ of Maritime Attachment and Garnishment, pursuant to Rule B of the Supplemental Admiralty Rules of the Federal Rules of Civil Procedure.

### DEFENDANT IS NOT PRESENT IN THE DISTRICT

    2.    I have attempted to locate the Defendant, ANTARES TRANSPORT GmbH within this District. As part of my investigation to locate the Defendant within this District, I checked the telephone company information directory, as well as the white and yellow pages for New York listed on the Internet or World Wide Web, and did not find any listing for the Defendant. Finally, I checked the New York State Department of Corporations' online database which showed no listings or registration for the Defendant.

3.      I located a website hosted at www.antar.com that appears to be owned, operated and maintained by the ANTARES TRANSPORT GmbH and/or the corporate parent, or group, to which it belongs – ANTARES LINES.  However, a review of that website does not appear to show any presence within this District.  *Attached hereto as Exhibit 1 is a printout from the aforementioned website.*

4.      I submit based on the foregoing that the Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims.

5.      Upon information and belief, the Defendant has, or will have during the pendency of this action, tangible and intangible property within this District and subject to the jurisdiction of this Court, held in the hands of in the hands of garnishees within this District, which are believed to be due and owing to the Defendant.

6.      This is Plaintiff's first request for this relief made to any Court.

## PRAYER FOR RELIEF FOR ORDER ALLOWING SPECIAL PROCESS SERVER

7.      Plaintiff seeks an Order pursuant to Rule 4(c) of the Federal Rules of Civil Procedure, for an Order appointing Patrick F. Lennon, Kevin J. Lennon, Charles E. Murphy, Nancy Peterson (Siegel), Colleen McEvoy, Anne C. LeVasseur or any other partner, associate, paralegal or agent of Lennon, Murphy & Lennon, LLC, or any process server employed by Gotham Process Servers, in addition to the United States Marshal, to serve the Ex Parte Order and Process of Maritime Attachment and Garnishment, together with any interrogatories, upon the garnishee(s), together with any other garnishee(s) who (based upon information developed subsequent hereto by the Plaintiff) may hold assets of, for or on account of, the Defendants,

8.    Plaintiff seeks to serve the prayed for Process of Maritime Attachment and Garnishment with all deliberate speed so that it may be fully protected against the potential of being unable to satisfy a judgment/award ultimately obtained by Plaintiff and entered against the Defendant.

9.    To the extent that this application for an Order appointing a special process server with respect to this attachment and garnishment does not involve a restraint of physical property, there is no need to require that the service be effected by the Marshal as it involves simple delivery of the Process of Maritime Attachment and Garnishment to the various garnishees to be identified in the writ.

## PRAYER FOR RELIEF TO SERVE LATER IDENTIFIED GARNISHEES

10.    Plaintiff also respectfully requests that the Court grant it leave to serve any additional garnishee(s) who may, upon information and belief obtained in the course of this litigation, to be holding, or believed to be holding, property of the Defendant, within this District. Obtaining leave of Court at this time to serve any later identified garnishees will allow for prompt service of the Process of Maritime Attachment and Garnishment without the need to present to the Court amended Process seeking simply to identify other garnishee(s).

## PRAYER FOR RELIEF TO DEEM SERVICE CONTINUOUS

11.    Further, in order to avoid the need to repetitively serve the garnishees/banks, Plaintiff respectfully seeks further leave of the Court, as set out in the accompanying Ex Parte Order for Process of Maritime Attachment, for any process that is served on a garnishee to be deemed effective and continuous service of process throughout any given day on which process is served through the next day, provided that process is served the next day, and to authorize service of process via facsimile or e-mail following initial *in personam* service.

Dated:          July 11, 2008
                Southport, CT


                                                    _____
                                                    Kevin J. Lennon


Sworn and subscribed to before me
this 11th day of July 2008.

_____
NOTRARY PUBLIC

# EXHIBIT 1



# ANTARES
# LINES

**Goslar**

ANTARES Transport GmbH
Am Marienbad, 12
38640 Goslar - Germany
Tel: +49-5321-394990
Fax: +49-5321-3949920
E-mail: shipping@antar.com

**Istanbul**

ANTARES SHIPPING & CHARTERING TRADING
CO.LTD
Kavisli sokak , fidan apt no. 15 d.3
Suadiye, 81074 Istanbul - Turkey
Tel: +90-216-3721078 / 3725985
Fax: +90-216-3725623
E-mail: istanbul@antar.com

**Tripoli**

ANTARES Transport (Tripoli branch)
P.O.Box 4018
Tripoli - Libya
Tel. +218-21-340 25 28
Fax. +218-21-340 34 96
e-mail tripoli@antar.com
internet Tripoli